UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| DARRELL WOODS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:15 CV 13 CDP |
| | ) |
| RICKY HAYS, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Missouri state prisoner Darrell Woods brings this civil rights action under 42 U.S.C. § 1983 claiming that several correctional employees at Northeast Correctional Center deprived him of his constitutional rights by assaulting him, in violation of the Eighth Amendment; and/or retaliating against him for pursuing grievances, in violation of the First Amendment.[1]  Woods also brings supplemental state law claims of negligence.  Because there are no genuine issues of material fact and the undisputed evidence shows no violation of Woods' constitutional rights, I will grant defendants' motion for summary judgment on Woods' constitutional claims.  I decline to exercise supplemental jurisdiction over his state law claims.

---

[1] Woods' claims against several defendants, as well as all of his due process claims, were previously dismissed from this action.  (Memo. & Order, ECF 10.)  Defendant Robert Lagore was inadvertently dismissed but later reinstated.  (Order, ECF 37.)  In addition to Lagore, Taylor Preston, Kristin Cutt, Tyree Butler, Stacie Lescalleet, and Tina Cobb remain as defendants in the case.

## Background[2]

At all times relevant to his complaint, Woods was incarcerated at Northeast Correctional Center (NECC). He currently is incarcerated at Jefferson City Correctional Center.

On July 1, 2014, defendant Correctional Officer I (COI) Taylor Preston attempted to place handcuffs on Woods in order to escort him to sick call. The handcuffs pinched Woods' wrist, and Woods cried out in pain. Alleging that Woods struck her hand and later grabbed her hand during the incident, Preston issued a conduct violation to Woods for minor assault. Woods claims that Preston's conduct while placing the handcuffs on him constituted an assault and amounted to excessive force in violation of the Eighth Amendment. He further claims that Preston's assault and issuance of the conduct violation were retaliatory and done to justify Woods' continued confinement in administrative segregation.

On October 16, 2014, defendant COI Robert Lagore pushed an empty milk carton through the food slot of Woods' cell door. The milk carton hit Woods in the groin area. Believing that Lagore's conduct was sexually motivated, Woods filed an Informal Resolution Request (IRR) regarding the alleged assault. The following day, Woods determined to pursue the matter under the Prison Rape

---

[2] This general background is provided here only to summarize the claims raised in Woods' complaint.

Elimination Act (PREA).[3] Woods claims that defendants Kristin Cutt and Tyree Butler, Functional Unit Managers (FUMs), met with him and attempted to dissuade him from filing a PREA report. Woods claims that Butler threatened to put him in disciplinary segregation for six months if he filed the report. Woods also claims that after he "made it clear" that he intended to pursue the report, Cutt issued an improper conduct violation against him for threats.

On January 26, 2015, defendant Tina Cobb, another FUM, ordered Woods to serve thirty days in disciplinary segregation on a conduct violation that arose out of Woods' PREA complaint. Woods claims that Cobb imposed this punishment in retaliation for his having filed the PREA complaint.

Finally, Woods claims that defendant Case Manager II (CMII) Stacie Lescalleet issued him a conduct violation for filing an IRR.

All defendants move for summary judgment, arguing that the undisputed evidence shows that the conduct alleged by Woods does not rise to the level of constitutional violations. Defendants further argue that they are entitled to qualified immunity on Woods' claims.

**Summary Judgment Standard**

When considering a motion for summary judgment, I must view the facts and inferences from the facts in the light most favorable to the nonmoving party.

---

[3] 34 U.S.C. §§ 30301, *et seq.*

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). As the moving parties, defendants must establish that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving parties have met this burden, the nonmoving party may not rest on the allegations in his pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). A verified complaint is equivalent to an affidavit for summary judgment purposes. *Hanks v. Prachar*, 457 F.3d 774, 775 (8th Cir. 2006) (per curiam).

At the summary judgment stage, courts do not weigh the evidence and decide the truth of the matter, but rather determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. However, summary judgment may be appropriate "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it[.]" *Scott v. Harris*, 550 U.S. 372, 380 (2007). In such circumstances, the mere existence of some alleged factual dispute will not serve to defeat summary judgment; instead, the factual dispute must be "genuine." *Id.*

In § 1983 actions, qualified immunity shields government officials from suit unless their conduct violated a clearly established right of which a reasonable

official would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). For a plaintiff to overcome qualified immunity, existing precedent must have placed the constitutional question "'beyond debate.'" *City & Cnty. of S.F., Calif. v. Sheehan,* 135 S. Ct. 1765, 1774 (2015) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011)). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft,* 563 U.S. at 743 (alteration added) (internal quotation marks and citation omitted).

The evidence before the Court, including Woods' verified complaint, shows that defendants' alleged conduct did not amount to constitutional violations, and no genuine issue of material fact exists for trial. For the following reasons, defendants have shown that they are entitled to judgment as a matter of law on Woods' constitutional claims, and I will grant their motion for summary judgment.

**Evidence and Discussion**

A.  Use of Force – COI Preston

On July 1, 2014, defendant COI Preston attempted to place handcuffs on Woods in order to escort him to sick call. The handcuffs pinched Woods' wrist.

Woods cried out in pain and pulled his hands away from Preston.[4] As a result of the incident, Woods suffered an abrasion to his wrist – about a quarter-inch in length, with no bleeding. Woods acknowledges that the incident could have been accidental and that his constitutional rights were not violated.[5]

"The Eighth Amendment bars correctional officers from imposing unnecessary and wanton pain on inmates, regardless of whether there is evidence of any significant injury." *Johnson v. Blaukat,* 453 F.3d 1108, 1112 (8th Cir. 2006) (citing *Hudson v. McMillian,* 503 U.S. 1, 9 (1992)). *See also Wilkins v. Gaddy,* 559 U.S. 34, 37-38 (2010) (per curiam) (extent of resulting injury is not in itself a threshold requirement for proving an Eighth Amendment excessive force claim). Nevertheless, the "Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson,* 503 U.S. at 9-10 (internal quotation marks and citation omitted). The core judicial inquiry when examining an Eighth Amendment excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6-7 (1992) (citing *Whitley v. Albers,* 475 U.S. 312, 320-21 (1986)). Although an unforeseeable accident may produce added anguish, it cannot on that

---

[4] Defts.' Exh. J (ECF 56-10).
[5] Woods Depo. II at 31-32 (ECF 56-36).

basis alone amount to malicious and sadistic intent to cause harm. *Cf. Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 464 (1947); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Campbell v. Grammer*, 889 F.2d 797, 802 (8th Cir. 1989) (distinguishing between accidental and intentional use of force). *See also Redmond v. Crowther*, 882 F.3d 927, 937 (10th Cir. 2018) ("accidentally deploying force is antithetical to deploying that force maliciously or sadistically.").

Preston is entitled to qualified immunity on Woods' Eighth Amendment excessive force claim. Woods himself acknowledges that the pinching with the handcuffs may have been accidental, that his injury was *de minimis*, and that Preston's conduct in pinching his wrist while applying the handcuffs did not violate his constitutional rights. From the undisputed evidence before the Court, a reasonable inference can be made that during the course of Woods pulling his hands away from Preston, his movement may have caused the handcuffs to pinch his wrist. A correctional officer's attempt to secure handcuffs while a prisoner is pulling away does not alone violate that prisoner's clearly established right to be free from cruel and unusual punishment. Woods does not allege that Preston used any other force to subdue him or cause harm. Preston's use of force during this incident was nothing more than *de minimis*. Further, there is no evidence that Preston acted with subjective malicious intent to cause harm.[6]

---

[6] An administrative investigation into Woods' allegation of assault against Preston showed the

Preston is therefore entitled to summary judgment on Woods' Eighth Amendment claim of excessive use of force.

B.  Sexual Assault – COI Lagore

On October 16, 2014, defendant COI Lagore pushed an empty milk carton through the food slot of Woods' cell door in an effort to stop Woods from himself pushing the carton through the food slot and onto the floor outside his cell.[7] When Lagore pushed the milk carton, Woods was standing directly in front of and a couple of inches away from the food slot. The opening of the food slot is at hip level, and the milk carton hit Woods in the groin area.[8] Lagore did not engage in any conduct or make any statements to lead Woods to believe that this act was sexual in nature. Woods believed Lagore's conduct was sexually motivated only because he thought Lagore was homosexual.[9] In his affidavit, Lagore attests that his conduct was not sexually motivated.[10]

Because sexual abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the unnecessary and wanton infliction of pain, in violation of the Eighth Amendment. *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997). To prevail on an Eighth

---

claim to be unfounded. (Ptlf.'s Exh. Q, ECF 58-2.)
[7] Defts.' Exh. C (ECF 56-3).
[8] Woods Depo. II at 10-11 (ECF 56-36).
[9] *Id.* at 11, 14-15.
[10] Defts.' Exh. C (ECF 56-3).

Amendment claim of sexual abuse, therefore, the inmate must prove, as an objective matter, that the alleged abuse caused pain and, as a subjective matter, that the officer acted with a sufficiently culpable state of mind. *Id.*

Woods does not allege that being struck in the penis area by an empty milk carton caused him any pain, psychological or otherwise. Accordingly, Woods has failed to show Lagore's conduct to be sufficiently serious to satisfy the objective component of an Eighth Amendment claim. In addition, Lagore's unrebutted affidavit shows that his conduct was not sexually motivated, and there is no evidence that Lagore acted with a culpable state of mind in pushing the milk carton through the food slot.

Lagore is therefore entitled to summary judgment on Woods' Eighth Amendment claim of sexual assault.

C.   Retaliation – Conduct Violations and Disciplinary Action

Woods claims that he was issued several conduct violations, was threatened, and suffered disciplinary action as punishment for engaging in protected conduct.

> An inmate may maintain a cause of action for retaliatory discipline under 42 U.S.C. § 1983 where a prison official files disciplinary charges in retaliation for an inmate's exercise of constitutional rights. But an inmate's retaliation claim fails if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule. Thus, a defendant may successfully defend a retaliatory discipline claim by showing "some evidence" the inmate actually committed a rule violation. [A] report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as "some evidence" upon which to base a

prison disciplinary violation, if the violation is found by an impartial decisionmaker.

*Bandy-Bey v. Crist*, 578 F.3d 763, 766 (8th Cir. 2009) (internal quotation marks and citations omitted) (alteration in *Bandy-Bey*).

    1.    *July 1, 2014 – Conduct Violation for Minor Assault, COI Preston*

On July 1, 2014, COI Preston issued a conduct violation to Woods for minor assault, reporting that during her attempt to handcuff Woods to take him to sick call, Woods struck her hand and grabbed her hand to push it away.[11] Woods denies that he struck Preston and claims that she issued the conduct violation in response to his IRR about being confined in administrative segregation (ad seg) and to provide justification for his continued confinement in ad seg.

Defendants submitted an inter-office communication (IOC) from Preston describing the incident, as well as an IOC from COI Robert Grote[12] who reported that he observed Woods engage in the offending conduct.[13] Woods was found guilty after a hearing on the violation,[14] and there is no evidence that the decisionmaker was not impartial. Reviewing staff in the grievance process found that Woods was properly issued the conduct violation, that his guilt was based on the evidence presented, and that he was sanctioned appropriately.[15]

---

[11] Defts.' Exh. I (ECF 56-9).
[12] Woods' claims against Grote were previously dismissed. (Memo. & Order, ECF 10.)
[13] Defts.' Exhs. G, H (ECF 56-7, 56-8).
[14] Defts.' Exh. L (ECF 56-12).
[15] Defts.' Exhs. M, N (ECF 56-13, 56-14).

Because defendants have presented "some evidence" that Woods actually committed the rule violation, Preston is entitled to summary judgment on this claim.

2. *October 17, 2014 – Threats of Disciplinary Action, FUM Butler*

The day after the Lagore milk carton incident, Woods decided he wanted to pursue a PREA complaint because he thought Lagore's conduct was sexually motivated. FUMs Cutt and Butler interviewed Woods regarding the complaint. In his verified complaint in this action, Woods attests that during this interview, Butler threatened to write him up for giving false information and keep him in "the hole" for six months if he pursued the complaint. Butler and Cutt attest that Butler merely advised Woods that the consequences of filing a false PREA allegation would be a conduct violation for giving false information.[16]

Even taking Woods' allegation as true, that Butler threatened him with a conduct violation and disciplinary segregation if he pursued his PREA complaint, Butler is nevertheless entitled to summary judgment on this retaliation claim.

To prevail on this claim of retaliation, Woods must show: 1) that he engaged in protected activity, 2) that Butler took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and 3) that the adverse action was motivated at least in part by Woods' exercise of the

---
[16] Defts.' Exhs. D, E (ECF 56-4, 56-5).

protected activity. *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (citing *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). A threat of retaliation is a sufficient injury if the threat was made in retaliation for an inmate's use of a prison grievance procedure. *Id.* at 992.

The filing of a PREA complaint is protected activity. *See Haynes v. Stephenson*, 588 F.3d 1152, 1155-56 (8th Cir. 2009). And for purposes of this discussion, I will assume that Butler's alleged threat to impose disciplinary sanctions for pursing this protected activity is sufficient to satisfy the third prong of *Santiago*. However, it cannot be said that in the circumstances of this case Butler's statement would chill a person of ordinary firmness from continuing in the protected activity. "'The ordinary-firmness test . . . is designed to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First Amendment.'" *Santiago*, 707 F.3d at 992 (quoting *Garcia v. City of Trenton,* 348 F.3d 726, 728 (8th Cir. 2003)). This test is an objective one. While the question is not whether Woods himself was deterred but what a prisoner of ordinary firmness would have done in reaction to the threat, I may nevertheless consider how Woods himself reacted as evidence of what a reasonable prisoner would have done. *Id.*

Here, Woods continued to pursue his PREA complaint regardless of the threat. He also continued to file and pursue other grievances against various prison

officials. Woods was therefore not deterred by Butler's conduct. Nor would a reasonable prisoner be deterred in the circumstances of this case. By no stretch of the imagination could Lagore's conduct in pushing the milk carton toward Woods be considered actionable under the PREA. *See* 34 U.S.C. § 30309(9), (10) (definitions of "rape" and "sexual assault with an object," respectively). Especially since by Woods' own admission, Lagore did not engage in any conduct or make any statements to lead Woods to believe that Lagore was acting in a sexual manner. Further, as discussed more fully below, investigation of the PREA complaint – which included review of Woods' statements, staff interviews, and recorded video – showed Woods' allegation against Lagore to be false and unfounded.[17] A reasonable prisoner would understand that making false statements to support a complaint could lead to disciplinary action, and this is what Butler warned against. *Cf. Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990) (no claim of retaliation when discipline is imparted for acts that prisoner is not entitled to perform). A threat to take disciplinary action against a prisoner who engages in this prohibited conduct would not deter a reasonable prisoner from continuing to pursue legitimate complaints under established grievance procedure.

Butler is therefore entitled to summary judgment on Woods' claim of retaliatory threats.

---

[17] Defts.' Exhs. X, Y (ECF 56-24, 56-25). Woods was issued a conduct violation for giving false information and was later found guilty of the violation.

### 3. *October 17, 2014 – Conduct Violation for Threats, FUM Cutt*

On October 17, 2014, Cutt issued a conduct violation to Woods for threats, reporting that when exiting her office following the PREA interview, Woods stated in a loud and threatening manner, "Man I am going to get these people."[18] In his verified complaint, Woods himself attests that he "made it clear" that he was going to follow through with his PREA complaint. Woods claims that Cutt's issuance of the conduct violation was in retaliation for his PREA complaint.

Defendants submitted an IOC from Cutt in which she described the incident, and specifically that Woods became aggravated during the PREA interview and felt he was being harassed. After Cutt informed Woods that he could face disciplinary action if he provided false information, Woods became more upset and made the statement that constituted the basis of the violation, directing the statement toward Cutt.[19] Woods was found guilty after a hearing on the violation,[20] and there is no evidence that the decisionmaker was not impartial. Reviewing staff in the grievance process found that Woods was properly issued the conduct violation and that his own conduct caused him to receive the violation.[21]

Because defendants have presented "some evidence" that Woods actually committed the rule violation, Cutt is entitled to summary judgment on this claim.

---

[18] Defts.' Exh. T (ECF 56-20).
[19] Defts.' Exh. S (ECF 56-19).
[20] Pltf.'s Exh. F (ECF 59-1 at p. 7).
[21] Defts.' Exh. U (ECF 56-21).

4. *January 8, 2015 – Conduct Violation for False Information, CMII Lescalleet*

On December 31, 2014, Woods went to the case management office at NECC and requested an IRR form so that he could file a complaint against Correctional Officer Chad Ream for harassment. Woods was given the form. Woods returned the form on January 7, 2015, completed with information against a different correctional officer, Officer Fronick, for alleged harassment that occurred that same date, January 7. Lescalleet issued a conduct violation to Woods for giving false information in order to obtain an IRR form.[22] Woods was permitted to proceed with his IRR against Fronick.[23] Woods claims that Lescalleet's issuance of the conduct violation was in retaliation for his filing IRRs.

Woods filed an IRR against Lescalleet for retaliation. During the investigation of this IRR, reviewing staff found that Lescalleet properly issued the conduct violation because requesting an IRR for one purpose, holding on to it, and then filing it for a different purpose could be considered misuse of the grievance process under rule D5-3.2 of the grievance policy. The investigating staff determined that Lescalleet was justified in her belief that Woods abused the grievance process by obtaining an IRR under false pretenses.[24] Woods was found

---

[22] Defts.' Exhs. F, EE (ECF 56-6, 56-31).
[23] *See* Defts.' Exh. FF (ECF 56-32).
[24] Defts.' Exh. GG (ECF 56-33).

guilty after a hearing on the violation,[25] and there is no evidence that the decisionmaker was not impartial.

Because defendants have presented "some evidence" that Woods actually committed the rule violation, Lescalleet is entitled to summary judgment on this claim.

   5.   *January 26, 2015 – Imposition of Discipline for Conduct Violation, FUM Cobb*

On January 14, 2015, Investigative Officer James Rhodes[26] issued Woods a conduct violation for giving false information and creating a disturbance for making a false PREA allegation against Lagore.[27] Cobb conducted a hearing on the violation on January 26, at which she reviewed witness statements and confidential material. From her review, she found the evidence to support the allegations. She therefore found Woods guilty of the violation and ordered him to serve thirty days in disciplinary segregation.[28] Woods claims that Cobb imposed this punishment in retaliation for his having filed the PREA complaint.

Defendants submitted a report from Rhodes in which he described his investigation into Woods' PREA complaint, and specifically that evidence obtained during the inquiry – including Woods' own statements, staff interviews, and recorded video – showed that Woods' allegation regarding the Lagore incident

---

[25] Pltf.'s Exh. G (ECF 59-1 at p. 8).
[26] Woods' claims against Rhodes were previously dismissed. (Memo. & Order, ECF 10.)
[27] Defts.' Exh. W (ECF 56-23).
[28] Defts.' Exh. Y (ECF 56-25).

was false and unfounded. Rhodes also reported that Woods had been advised prior to filing his PREA complaint that making false allegations could result in a conduct violation.[29] Based on evidence presented at a hearing, Cobb determined the conduct violation to be appropriate.[30] There is no evidence that Cobb was not impartial.

Because defendants have presented "some evidence" that Woods actually committed the rule violation, Cobb is entitled to summary judgment on this claim of retaliatory discipline.

## Conclusion

For the reasons set out above, defendants are entitled to summary judgment on Woods' constitutional claims. Because I will dismiss all claims over which this Court has original jurisdiction, I decline to exercise supplemental jurisdiction over Woods' state law claims of negligence. 28 U.S.C. § 1367(c)(3). *See also Anderson v. Franklin Cnty., Mo.*, 192 F.3d 1125, 1131 (8th Cir. 1999); *American Civil Liberties Union v. City of Florissant*, 186 F.3d 1095, 1098-99 (8th Cir. 1999) (when state and federal claims are joined and all federal claims are dismissed on a motion for summary judgment, state claims are ordinarily dismissed without prejudice); *Willman v. Heartland Hosp. E.*, 34 F.3d 605, 613-14 (8th Cir. 1994) (same).

---

[29] Defts.' Exh. X (ECF 56-24).
[30] Defts.' Exhs. B, Y (ECF 56-2, 56-25).

Accordingly,

**IT IS HEREBY ORDERED** that defendants' Motion for Summary Judgment [54] is granted as to plaintiff Darrell Woods' Eighth Amendment claims of excessive force and sexual assault, and his First Amendment claims of retaliation, and these claims are dismissed with prejudice.

**IT IS FURTHER ORDERED** that Woods' remaining state law claims of negligence are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

An appropriate Judgment is entered herewith.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 19th day of March, 2018.